## HERMANN, BRIGGS & CO. *vs.* HOOTSELL ET AL.

APPEAL FROM THE PARISH COURT FOR THE PARISH AND CITY OF

NEW ORLEANS.

Under the laws of Mississippi the maker of a note has the right to oppose against all subsequent endorsees, the same equities and defences which he may have against the original payee.

Where the bill of sale of certain slaves expresses it was for *cash*, and the purchaser gave a note for the balance of account due the vendor, including the *price* of the slaves: *Held*, that the note and bill of sale are of equal dignity, and no other evidence being produced that the note was given through error, the legal presumption is, it is justly due, and that no cash was actually paid as stated in the bill of sale.

This is an action on a promissory note, executed jointly and severally by Mrs. A. M. Glasscock and John Hootsell, at Natchez, on the 27th of March, 1838, payable eight months after date, to the order of Samuel Cotton, for $1944 89.

The suit was commenced by attaching property of Hootsell in the hands of Franklin & Henderson in New Orleans.

Hootsell admitted his signature, but averred the note was given in error; that he signed as surety of Mrs. Amanda M. Glasscock, who had executed it at the instance of Samuel Cotton, from whom she had purchased a negro woman and child for $1300; that Cotton gave a bill of sale expressing it to have been made for cash, and afterwards made out an account against her, including the $1300, said to have been paid in cash, and with other items and some credits allowed, left a balance of $1944 89, for which the note was given.

EASTERN DIS.
*May*, 1841.

HERMANN,
BRIGGS & CO.
*vs.*
HOOTSELL ET AL.

Mrs. Glasscock now intervened and set up the error complained of, and prayed that the note be cancelled as having been executed in error.

The facts on which the case mainly turned are fully set out in the opinion of the court.

The Parish Judge was of opinion that the bill of sale was evidence of the price of the slaves having been paid in cash; and that this amount being included in the account for which the note was afterwards given was error, and could not be recovered. There was judgment for the balance of $644 89, with 8 per cent. interest, after deducting $1300, the price of the slaves. The plaintiffs appealed.

*Grima & Farrar*, for the plaintiffs.

*Maybin*, for the defendant.

*R. N. & A. N. Ogden*, for the intervenor.

*Simon, J.* delivered the opinion of the court.

Plaintiffs seek to recover $1944 89, which is the amount of a promissory note of hand subscribed *in solido* by the defendant and by the intervenor, Mrs. A. M. Glasscock, to the order of Samuel Cotton, who endorsed it over to the plaintiffs.

The defence sets up that said note was given through error under the following circumstances: that on the 21st of December, 1836, Cotton sold to A. M. Glasscock, the intervenor, a negro woman, Patsey, and child, for the sum of $1300, which was paid *in cash* by her or by her agent; that having had other dealings previously and subsequently to the sale, a settlement took place between them at Natchez on the 27th of March, 1838; that the account, made by Cotton shows a balance of $1944 89, purporting to be due him by Mrs. Glasscock, which account she settled by giving Cotton the note sued on. That in said account, said Cotton through error or design again charged for the sum of $1300, being the price of said slaves, which error she did not discover and was

entirely ignorant of. The defendant further avers that he signed the note as security, that he knew nothing of the error or design of Cotton, who afterwards passed away the said note; but that according to the laws of Mississippi, where the transaction took place and where the parties resided, the note, though in the hands of plaintiffs, is subject to all the equity and to all the objections which existed between the original parties.

EASTERN DIS.
May, 1841.

HERMANN,
BRIGGS & CO.
vs.
HOOTSELL ET AL.

A few days after the defendant's answer was filed, A. M. Glasscock intervened to oppose plaintiff's claim on the same grounds alleged by the defendant. The Parish Court deducted the sum of $1300 from the amount of the note, and gave judgment in favor of the plaintiffs for $644 89 only; from which judgment said plaintiffs appealed.

There is no doubt that under the laws of Mississippi, the maker of a note has the right to oppose against all subsequent endorsees, the same equities and defences which he may have against the original payee. The first and principal inquiry therefore will be whether the defendant and the intervenor have adduced sufficient proof of the facts by them alleged against the plaintiffs' right of recovery?

Under the laws of Mississippi, the maker of a note has the right to oppose against all subsequent endorsees, the same equities and defences which he may have against the original payee.

In support of their defence, they have produced the bill of sale from Cotton to the intervenor, in which it is stated that " for and in consideration of the sum of thirteen hundred dollars to him in hand paid, the receipt whereof is hereby acknowledged, he has this day bargained, &c." The next evidence is the detailed account signed by Cotton, which was the foundation of the note sued on; said account is composed of several small sums, which, with the item of $1300, stated thus: " 1 negro woman and child got last January 6, as cash, $1300," make the aggregate amount of $2090 26, to which adding two small balances of account for the years 1835 and 1836, and upwards of $300 interest, and deducting therefrom a credit of $400 paid on the day of settlement (27th March, 1838) make the very same amount for which the note sued on was given. The defendant has also introduced the testimony

EASTERN DIS. of a witness to show Cotton's hand writing to the two docu-
May, 1841. ments, and particularly to prove that the slaves mentioned in
HERMANN, the account are the same named in the bill of sale.
BRIGGS & CO.
vs.        From an inspection of the account, which, as we have alrea-
HOOTSELL ET AL. dy noticed, is composed of small items, except the sum in dis-
pute; and from the circumstance that four hundred dollars in
cash were paid on account thereof by the intervenor on the day
of settlement, it is difficult to believe that she would have given
her note for the balance of said account, including therein
$1300 which she had already paid, if she had not been satisfied
that she owed it. No attempt has been made to introduce any
evidence that the intervenor really made the payment of the
thirteen hundred dollars mentioned in the bill of sale; and
this was, in our opinion, necessary to destroy the presumption
arising from the fact of her having given the note sued on,
which must be considered at least as *prima facie* evidence of
its being justly due, until the contrary is shown. The strength
of the defence however is that the bill of sale itself shows the
thirteen hundred dollars to have been once paid, that this cannot
be contradicted by parol testimony, and that consequently the
same sum must have been charged in the account through
error or design. This, it seems to us, is a *non sequitur;* if on
the one hand, the bill of sale shows that the $1300 were paid;
on the other hand, the settlement of account and the note given
for the balance due thereon, prove that said balance is due;
the evidence is of equal dignity, and therefore we cannot take
the acknowledgment made in the bill of sale, as conclusive
proof of the error alleged, when we have a counter acknow-
ledgment in writing that the sum claimed is justly due. It is
of every day's occurrence that, in the ordinary transactions of
men, deeds of sale of real property and slaves are passed for
cash, although the vendor does not receive a cent, and that the
object of the parties to such sales being to give a title to the
purchaser clear of mortgages, the vendor takes a note for the
amount of the sale. In such cases, the note is considered as
having the effect of a counter-letter, which cannot be destroy-

Where the bill of sale of certain slaves expresses it was for *cash*, and the purchaser gave a note for the balance of account, due the vendor, including the *price* of the slaves: *Held,* that the note and bill of sale are of equal dignity, and no other evidence being produced that the note was given through error, the legal presumption is, it is justly due, and that no cash was actually paid as stated in the bill of sale.

ed by the recital in the deed that the amount of the purchase
money was actually paid in cash; the note is due independent
of the sale though growing out of the same transaction, and
the only consequence against the vendor is that he has no
longer the power of exercising his mortgage and legal privi-
lege. In the absence of any other evidence, we may fairly
presume that the note sued on was given under similar circum-
stances, and giving to it the force of a counter-letter, we shall
naturally suppose that the parties, by settling their general ac-
count, and the intervenor by giving her note, intended to pro-
vide against the consequences of the acknowledgment contain-
ed in the bill of sale, and to secure to her vendor the payment
of the price of the slaves. We think that the defendant and
intervenor have not satisfactorily proven their allegations and
that the judge *a quo* erred in giving them credit for the sum in
dispute.

This view of the case renders it unnecessary to examine the
question arising from the bill of exceptions taken to the opi-
nion of the lower court, rejecting the parol evidence offered
by plaintiffs to show that according to the common law and
statutes of Mississippi, it was competent for them to inquire into
the facts of non-payment of money acknowledged to have been
received in a written instrument; and to prove that in fact no
money had been paid by the intervenor to Cotton as stated in
the bill of sale. But the evidence itself accompanies the re-
cord, and we find in it the proof of an important fact which ap-
pears to us to be unexceptionable, to wit : " that the bill of sale
of the slaves from Cotton to A. M. Glasscock, *remained in the
hands of Cotton* till after the settlement of accounts above
spoken of, and that it remained in the desk of said Cotton in
his store till after said settlement, when it was delivered to the
said A. M. Glasscock." This part of the evidence objected
and excepted to, does not, it seems to us, prove any thing con-
trary to or beyond what is contained in the written instrument,
but goes merely to establish a circumstance relative to the acts
done by the parties independent of the written sale, and there-

Eastern Dis.
May, 1841.

HERMANN,
BRIGGS & CO.
vs.
HOOTSELL ET AL.

fore cannot be rejected; 13 *La. Rep.*, 268. This testimony explains the whole transaction, and puts it before us in its true light; it is clear that the intervenor, although the slaves had been delivered to her, never was put in possession of the bill of sale containing the receipt of the $1300 in dispute, until she gave her note to Cotton as the balance due by her in consequence of the settlement of their accounts; and it is thereby obvious that she had not paid the amount of the purchase money at the date of the instrument, and that it was only after getting her note, that Cotton gave her a written title to the slaves by her purchased. This accounts for the reason why the same amount was carried in the account current *as cash*. Cotton, by giving up the bill of sale receipted, considered it *as cash* at the moment of closing his transactions with the intervenor, or in other words, as an advance by him made to her, in cash, for which at the same moment, she gave him her note with satisfactory security.

We are satisfied that the defendant owes the whole amount of the note sued on, and that the intervenor has failed to establish the error by her alleged.

It is therefore ordered, adjudged and decreed that the judgment of the Parish Court be annulled, avoided and reversed; and proceeding to give such judgment as, in our opinion, ought to have been rendered by the inferior court; it is ordered, adjudged and decreed that the intervenor's claim be rejected and that the plaintiffs recover of the defendant the sum of nineteen hundred and forty-four dollars and eighty-nine cents, with eight per cent. interest per annum thereon from the 30th of November, 1838, until paid, with costs in both courts to be paid by the said defendant and the intervenor.